1  JASON R. FLANDERS, SBN 238007
   ERICA A. MAHARG, SBN 279396
2  AQUA TERRA AERIS (ATA) LAW GROUP
   4030 Martin Luther King Jr. Way
3  Oakland, CA 94609
   Telephone: (916) 202-3018
4  Email:  jrf@atalawgroup.com

5
   NICOLE C. SASAKI, SBN 298736
6  SAN FRANCISCO BAYKEEPER
   1736 Franklin Street, Suite 800
7  Oakland, CA 94612
   Telephone: (510) 735-9700
8  Email: nicole@baykeeper.org

9
   **Attorneys for Plaintiff**
10 SAN FRANCISCO BAYKEEPER

11

12                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
13

14

15 SAN FRANCISCO BAYKEEPER,                Case No.:

16                   Plaintiff,            **COMPLAINT FOR INJUNCTIVE AND
                                           DECLARATORY RELIEF**
17          vs.                            **(Resource Conservation and Recovery Act,
                                           42 U.S.C. § 6972(a)(1)(B); Nuisance *Per Se*;
18 ALLIED ENGINEERING & PRODUCTION         Public Nuisance)**
   CORPORATION, ALLIED LAND COMPANY,
19 and STONE BOATYARD, LLC,

20

21                   Defendants.

22

23

24

25

26

27

28

**<u>INTRODUCTION</u>**

1.     Plaintiff San Francisco Baykeeper ("Plaintiff" or "Baykeeper") brings this action against Defendants Allied Engineering & Production Corp. ("Allied Engineering"), Allied Land Co. ("Allied Land") (collectively "Allied"), and Stone Boatyard, LLC ("Stone") (collectively "Defendants"), to redress past and ongoing harms stemming from contamination of a Shoreline Parcel, APN 70-195-19 ("Shoreline Parcel") that abuts and is partially submerged by the Oakland Inner Harbor Tidal Canal ("Oakland Estuary" or "Estuary").[1]

2.     Allied Engineering operated a machine shop from 1951 to approximately 2011, located at 2421 Blanding Avenue, Alameda, California (the "Facility"), and Allied Land owned the real property where the Facility is located, until approximately December 2018.

3.     The Facility manufactured parts for the aviation industry, where it stored and used hazardous materials, hydraulic oils, lubes, greases, fuels, coolants, and solvents. Pictures from inspections by the California Department of Toxic Substances Control ("DTSC") show that Allied Engineering also stored metal waste and shavings on site.

4.     Neither Allied Engineering nor Allied Land ever owned the Shoreline Parcel, where all or the majority of the metal waste is located. The Shoreline Parcel, at the time Baykeeper became aware of the contamination, was owned by the United States, but since that time, title has transferred to Stone. Stone also owns parcels adjacent to the Shoreline Parcel and the Facility.

5.     Based on information and belief, Baykeeper alleges that, while operating the Facility, Allied dumped metal waste and shavings on the Shoreline Parcel. This metal waste has contaminated and continues to contaminate the Shoreline Parcel and the Estuary.

6.     The metal waste on the Shoreline Parcel has leached and continues to leach metals into the soil and into the Estuary. The contamination, including various heavy metals such as lead, cadmium, chromium, nickel, copper, zinc, vanadium, and molybdenum, poses unacceptable risks to the health of the surrounding ecosystem. Sampling indicates the presence of lead contamination in the contaminated soil in excess of California Hazardous Waste Criteria.

---

[1] The contaminated Shoreline Parcel may also include portions of APN 70-196-61.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

7.     Baykeeper asserts the Defendants' past and continuing violations of section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA") may present an imminent and substantial endangerment to health and the environment.

8.     Baykeeper asserts that the Defendants' deposition, leaving, release, placement, and dumping of metal waste and shavings in and around the Shoreline Parcel violates Alameda Mun. Code §§ 18-22.6, 24-9.3, 23-4.3, and California Health and Safety Code § 117480, amongst other laws, and thereby constitute nuisance *per se.*

9.     Baykeeper asserts that the Defendants' deposition, leaving, release, placement, and dumping of metal waste and shavings in and around the Shoreline Parcel constitutes a public nuisance.

## JURISDICTION AND VENUE

10.     This is a civil suit brought pursuant to RCRA, 42 U.S.C. § 6972(a)(1)(B), 28 U.S.C. § 1331 (an action arising under the laws of the United States), and 28 U.S.C. § 2201 (declaratory relief).

11.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are related to the federal law claims and form part of the same case or controversy. Such state law claims include nuisance *per se* and public nuisance.

12.     On or about June 10, 2020, Baykeeper provided notice of Stone's violations of RCRA and nuisance laws, and of Plaintiff's intention to file suit against the Defendants, to the Administrator of the United States Environmental Protection Agency ("EPA"), Andrew Wheeler; the U.S. Attorney General, William Barr; the Administrator of EPA Region IX, John W. Busterud; the Acting Director of the California Department of Resources & Recycling, Ken DaRosa; and to Stone's registered Agent for Service of Process, David S. Hall, as required by 42 U.S.C. § 6972(b)(2). A true and correct copy of the June 10, 2020 Notice Letter ("Stone Notice Letter") is attached as "Exhibit A" and incorporated by reference herein.

13.     On or about July 10, 2020, Baykeeper provided notice of Allied Engineering's and Allied Land's  violations of RCRA and nuisance laws, and of Plaintiff's intention to file suit against the Defendants, to the Administrator of the EPA, Andrew Wheeler; the U.S. Attorney General, William Barr; the Administrator of EPA Region IX, John W. Busterud; the Acting Director of the California Department of Resources & Recycling, Ken DaRosa; and to Allied's President/registered

Agent for Service of Process, Kassandra Miller, as required by 42 U.S.C. § 6972(b)(2). A true and correct copy of the July 10, 2020 Notice Letter ("Allied Notice Letter") is attached as "Exhibit B" and incorporated by reference herein.

14.     More than ninety (90) days have passed since the Stone Notice Letter and Allied Notice Letter were received by the Defendants and the state and federal agencies. Neither EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint.

15.     The Court has venue pursuant to 28 U.S.C. § 1391. At least one Defendant resides in the District, and all Defendants reside in the State of California where the District is located. *Id.* at § 1391(b)(1).

16.     Alternatively, Venue is proper here because contaminated parcel(s) sit within the district. *Id.* at § 1391(b)(2).

### INTRADISTRICT ASSIGNMENT

17.     Intradistrict assignment of this matter to the San Francisco or Oakland Division of the Court is appropriate pursuant to Civil Local Rule 3-2(d). The events or omissions which give rise to Baykeeper's claims occurred in Alameda County, which is under the jurisdiction of the San Francisco or Oakland Division of the Northern District of California.

### THE PARTIES

### PLAINTIFF

18.     San Francisco Baykeeper is an environmental non-profit public benefit corporation organized in accordance with the laws of the State of California. Baykeeper's approximately 3,500 members live and/or recreate in and around the San Francisco Bay area. Baykeeper's mission is to defend San Francisco Bay from the biggest threats and hold polluters accountable to create healthier communities and help wildlife thrive. Baykeeper works to stop pollution, in part, by monitoring and investigating pollution and its sources with the end goal of a Bay that is free from harmful pollution and safe for recreation with resilient, healthy shorelines. Additionally, Baykeeper actively seeks federal and state agency implementation of federal environmental laws, and, where necessary,

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1    initiates enforcement actions on behalf of itself and its members. San Francisco Baykeeper's offices

2    are located at 1736 Franklin Street, Suite 800, Oakland, CA, 94612.

3         19.    Baykeeper and its individual members have an interest in the preservation and use of

4    waters in and around San Francisco Bay, including, but not limited to the Pacific Ocean, San

5    Francisco Bay, the Oakland Estuary, San Leandro Bay, San Pablo Bay, the Petaluma River, and their

6    tributaries. Specifically, Baykeeper's members sail, swim, picnic, fish, hike, surf, paddle, standup

7    paddleboard, kayak, wade, bike, photograph and enjoy the wildlife in and around these waters,

8    including the reach at issue in this Notice Letter. The actions of Defendants results in numerous

9    injuries to Baykeeper's interests, such as: loss, destruction, or damage to wetlands and waterways;

10   diminished aesthetic enjoyment; harm to wildlife, including federally protected species; degraded

11   water quality; and diminished quality of life. The ability of Baykeeper's members to sail, swim,

12   picnic, fish, hike, surf, paddle, standup paddleboard, kayak, wade, bike, photograph and enjoy the

13   wildlife in and around these waters, and to use and enjoy the Oakland Estuary and the San Francisco

14   Bay, is harmed by Defendants' violations of law.

15                                        **DEFENDANTS**

16        20.    Plaintiff is informed and believes that Allied Engineering and Allied Land owned

17   and/or operated the Facility from approximately 1951 to approximately 2011, and that it was during

18   this period that the adjacent Shoreline Parcel was contaminated with metal waste. Plaintiff is informed

19   and believes that Allied Engineering and Allied Land are business corporations incorporated under

20   the laws of the State of California. Based on information and belief, Baykeeper alleges that, while

21   operating the Facility, Allied dumped metal waste and shavings onto the Shoreline Parcel.

22        21.    Plaintiff is informed and believes that Stone owns the Shoreline Parcel. Plaintiff is

23   informed and believes that Stone is a limited liability company under the laws of the State of

24   California. Based on information and belief, Baykeeper alleges that, while owning the Shoreline

25   Parcel, Stone has not cleaned up or removed the metal waste and shavings which Allied dumped onto

26   the Shoreline Parcel.

27

28

## LEGAL BACKGROUND
## RESOURCE CONSERVATION AND RECOVERY ACT

22.     RCRA prohibits the disposal of solid waste, except at a sanitary landfill or hazardous waste disposal facility. 42 U.S.C. §§ 6945(a), 6903(14).

23.     RCRA defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste … or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters." *Id*. at § 6903(3).

24.     Under RCRA, the definition of "solid waste" is broad and includes "any garbage, refuse, … and other discarded material, including solid, liquid, semisolid or contained gaseous material resulting from … industrial … operations." 42 U.S.C. § 6903(27).

25.     The citizen  suit provision of RCRA allows for any person to commence a civil action on their own behalf "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

### NUISANCE *PER SE*

26.     A nuisance *per se* occurs when the legislative body declares that a particular act is a nuisance. *Olson v. Beck*, 2011 U.S. Dist. Lexis 114805 at *61 (N.D. Cal. 2011) ("A nuisance *per se* exists where the nuisance is 'legislatively declared.'") Nuisance *per se* does not require the plaintiff show harm. Rather a nuisance *per se* occurs as long as "the conditions specified in the statute or ordinance [defining the nuisance] exist." *Id*. at *62.

27.     Alameda Mun. Code § 18-22.6 prohibits any person from depositing, leaving or maintaining any "refuse, rubbish, garbage, or other discarded or abandoned objects ... upon any public or private lot of land in the City, so that the same might be or become a pollutant." Alameda Mun. Code §18-23.8 further declares that "any condition caused or permitted to exist in violation of any of the provisions of this article … is declared and deemed a public nuisance."

28.     Alameda Mun. Code § 24-9.3 "declares that any hazardous materials release in the City is a public nuisance." "Hazardous material" includes any material that "poses a significant actual or potential hazard to human health or safety or to the environment." Alameda Mun. Code § 24-9.2.

29.     Alameda Mun. Code § 23-4.3 states that "[a]ll weeds, rubble, rubbish or other rank growth located upon private property … which are otherwise a menace to health or safety, are a public nuisance."

30.     California Health and Safety Code § 117480 states that "[e]very person who places, deposits, or dumps any garbage in or upon navigable waters of this state … is guilty of a misdemeanor."

## PUBLIC NUISANCE

31.     California Civil Code § 3479 defines "nuisance" as "[a]nything which is injurious to health, … or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin."

32.     California Civil Code § 3480 defines "public nuisance" as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

33.     A person need not be an owner of the property where the nuisance occurs to be liable for creating the nuisance. The "the critical question is whether the defendant created or assisted in the creation of the nuisance." *City of Modesto Redevelopment Agency v. Sup. Ct.*, 119 Cal.App.4th 28, 38 (2004). A former property owner or operator, whose conduct created or assisted in the creation of the nuisance is subject to liability. Similarly, the current owner of a property, who may not be responsible for the initial conditions giving rise to the nuisance claim "assists in the creation" of a continuing nuisance if it fails to abate a nuisance on its property. *See id.*

## FACTUAL BACKGROUND

34.     Baykeeper members alerted Baykeeper to a stretch of the Estuary's shoreline that was contaminated with metal waste. Upon inspection, Baykeeper staff discovered that the contamination consisted of metal shavings.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

35.     The contamination is located on the Shoreline Parcel, APN 70-195-19, adjacent to the Facility site. The Shoreline Parcel abuts and is partially submerged by the Oakland Inner Harbor Tidal Canal ("Oakland Estuary" or "Estuary").

36.     The Facility was formerly operated by Allied Engineering and owned by Allied Land, located at 2421 Blanding Avenue in Alameda.

37.     While in operation by Allied, the Facility manufactured parts for the aviation industry where Allied stored and used hazardous materials, hydraulic oils, lubes, greases, fuels, coolants, and solvents on the property. Pictures from inspections by DTSC show that Allied also stored metal shavings on site.

38.     All information gathered by Baykeeper indicates that Allied dumped the metal shavings along the shoreline while they operated at the Facility. The Shoreline Parcel was owned by the United States, but has been transferred to Stone.

39.     Baykeeper is informed and believes that Stone is and has been aware of the metal waste along the Shoreline Parcel since, or shortly after, its purchase of the land.

40.     Baykeeper is also informed and believes that in spite of Stone's knowledge of the presence of metal waste on the Shoreline Parcel, it has not remediated the contamination.

41.     The metal waste on the Shoreline Parcel has leached and continues to leach metals into the soil and into the Estuary. The contamination, including various heavy metals, poses unacceptable risks to the health of the surrounding ecosystem. Sampling indicates the presence of lead contamination in excess of California Hazardous Waste Criteria and shows the presence of additional metals above Tier 1 Environmental Screening Levels, including lead, cadmium, chromium, nickel, copper, zinc, vanadium, and molybdenum.

42.     The Estuary is hydrologically connected to San Francisco Bay and San Leandro Bay. Contamination entering the Estuary from the Shoreline Parcel, in turn results in contamination to both San Leandro and San Francisco Bays.

43.     San Francisco Bay is an ecologically-sensitive waterbody and a defining feature of Northern California. The Bay is an important and heavily-used resource, with special aesthetic and recreational significance for people living in the surrounding communities. San Francisco Bay

1    provides complex estuarine habitat for a diverse collection of plant and animal species. The Bay's

2    once-abundant and varied fisheries have been drastically diminished by pollution, and much of the

3    wildlife habitat of the Bay is degraded.

4         44.    The beneficial uses of San Francisco Bay and its tributaries include commercial and

5    sport fishing, estuarine habitat, fish migration, navigation, preservation of rare and endangered

6    species, water contact and non-contact recreation, shellfish harvesting, fish spawning, and wildlife

7    habitat. The beneficial uses of San Leandro Bay, which is adjacent and connected to the San Francisco

8    Bay, include commercial and sport fishing, estuarine habitat, fish migration, navigation, preservation

9    of rare and endangered species, water contact and non-contact recreation, and wildlife habitat.

10        45.    Heavy-metal contamination originating from the Shoreline Parcel adversely affects

11   the water quality of San Francisco Bay and San Leandro Bay and threatens the beneficial uses and

12   ecosystem of those interconnected habitats, including key habitat for threatened and endangered

13   species. The level of metal contamination endangers local birds, fish, and other wildlife. The metal

14   waste, which is clearly visible to a casual observer, also creates a visual blight for anyone observing

15   the shoreline, including Baykeeper's members.

16        46.    On December 16, 2019, a Draft Remedial Action Plan ("Action Plan") for the Facility,

17   was prepared by Apex Companies, LLC, on behalf of TCI 2421 Blanding, LLC, who recently

18   purchased the Facility site from Allied Land.

19        47.    The Action Plan was prepared to address subsurface impacts at the site of past

20   industrial use. Action Plan at 1-1. The Action Plan states that the Regional Water Quality Control

21   Board – San Francisco Bay Region, San Francisco Bay Conservation and Development Commission,

22   City of Alameda, and the Alameda County Department of Environmental Health are all expected to

23   play a role in the implementation of the Action Plan. *Id*.

24        48.    The Action Plan addresses approximately 2.9 acres of the Facility, which does not

25   include the Shoreline Parcel, which it characterizes as "a strip of land owned by a separate owner

26   which abuts the Oakland Estuary to the northeast." Action Plan at 2-1. The Action Plan addresses the

27   "strip of land between the manufacturing building and the adjacent parcel to the northeast" (the

28   Shoreline Parcel), which it calls the Rear Yard Area. *Id.*

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

49.    The Action Plan acknowledges that metal debris exists on the Shoreline Parcel: "Prior investigations have identified visible metal debris, also called swarf, on the off-site shoreline." Action Plan at 2-2.

50.    The Action Plan also acknowledges that metal debris is located on the Rear Yard Area: Table 7-1, "Summary of Recognized Environmental Conditions, 2421 Blanding Avenue, Alameda, California", with a heading "2421 Blanding Avenue – On-Site Metal Shavings" notes that a previous study "observed metal shavings along the property northeast of the Site building and along the bank of the Oakland Estuary. The metal shavings were observed to be located on both the Site and the off-Site property owned by Stone Boat Yard." Action Plan, Table 7-1, at 3. Table 7-1 details a history of testing since 2006 at the location of the metals that has found metals present. *Id*. The Action Plan further states that "[the Rear Yard Area] has historic detections of metals in soil exceeding relevant screening levels for lead, chromium, and cadmium." Action Plan at 2-2.

51.    Table 7-1 of the Action Plan further details "Metal Shavings – Stone Boat Yard" as a known condition and that it is contaminating the Estuary based on sediment samples taken in 2015. Action Plan, Table 7-1, at 8.

52.    Despite the clear impacts of metal debris from the Shoreline Parcel, it is not included in the plan.

**PRIVATE ATTORNEY GENERAL DOCTRINE**

53.    Plaintiff brings this action as a private attorney general pursuant to California Code of Civil Procedure section 1021.5, and any other applicable legal theory, to enforce important rights affecting the public interest.

54.    Issuance of the relief requested in this Complaint will confer significant benefits on the general public by, among other benefits:  requiring Defendants to remove the metal shavings detailed herein, and lawfully dispose of them, as well as abate the contamination.

55.    Issuance of the relief requested in this Complaint will result in the enforcement of important rights affecting the public interest, by compelling Defendants to remove the metal waste and abate the contamination, to protect public health and natural resources.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1    56.    The necessity and financial burden of enforcement are such as to make an award of

2    attorneys' fees appropriate in this proceeding. Absent enforcement by Plaintiff, the metal pollution

3    detailed herein might otherwise have evaded legally adequate removal and abatement.

4    57.    Plaintiff has served a copy of this Complaint on the California Attorney General's

5    office to give notice of Plaintiff's intent to bring this proceeding as private attorneys general under

6    California Code of Civil Procedure section 1021.5, attached as "Exhibit C."

7                              **FIRST CAUSE OF ACTION**

8                                **Against All Defendants**

9                         <u>**Violations of RCRA, § 7002(a)(1)(B)**</u>

10    58.    Plaintiff incorporates by reference each and every paragraph of this Complaint as

11    though they were set forth in full herein.

12    59.    Through its past ownership and operation of the Facility, Allied is a past and present

13    generator of solid waste. Allied has contributed and is contributing to the past and present handling,

14    storage, treatment, transportation, and disposal of solid waste metal shavings and debris at the

15    Shoreline Parcel in a manner that may present an imminent and substantial endangerment to health

16    and the environment.

17    60.    Through its ownership of the Shoreline Parcel, Stone is a past and present generator

18    of solid waste. Stone has contributed and is contributing to the past and present handling, storage,

19    treatment, transportation, and disposal of solid waste metal shavings and debris at the Shoreline

20    Parcel in a manner that may present an imminent and substantial endangerment to health and the

21    environment.

22    61.    An action for relief against Defendants for the imminent and substantial

23    endangerment described in this Complaint is authorized by RCRA section 7002(a)(1)(B), 42 U.S.C.

24    § 6972(a)(1)(B). Defendants' acts and omissions that may be posing an imminent and substantial

25    endangerment within the meaning of RCRA section 702(a)(1)(B), as alleged above, are continuing.

26    If allowed to continue, these acts and omissions will irreparably harm Plaintiff.

27    62.    Defendants are strictly, jointly, and severally liable for abatement of this imminent and

28    substantial endangerment. Plaintiff is entitled to injunctive relief restraining and enjoining Defendants

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1  and requiring each of them, jointly and severally, promptly and completely to take such action as may

2  be necessary to abate the imminent and substantial endangerment at issue.

3        63.    For which Plaintiff seeks relief, as described, below.

4  **SECOND CAUSE OF ACTION**

5  **Against All Defendants**

6  **Nuisance _Per Se_**

7        64.    Plaintiff incorporates by reference each and every paragraph of this Complaint as

8  though they were set forth in full herein.

9        65.    Allied's deposition, leaving, release, placement, and dumping of metal waste and

10  shavings was in violation of the Alameda Mun. Code §§ 18-22.6, 24-9.3, 23-4.3 and California Health

11  and Safety Code § 117480, amongst other laws, and contrary to the purposes and legislative intent

12  for which a standard of care is set and/or the conduct necessary to protect the public and environment

13  from the type and severity of such illegal acts, omissions, and conduct engaged in by Allied.

14  Therefore, such activities and violations also constitute nuisance _per se._

15        66.    Stone has permitted to exist and maintained the conditions at the Shoreline Parcel in

16  violation of laws Alameda Mun. Code §§ 18-22.6, 24-9.3, 23-4.3 and California Health and Safety

17  Code § 117480, amongst other laws, and contrary to the purposes and legislative intent for which a

18  standard of care is set and/or the conduct necessary to protect the public and environment from the

19  type and severity of such illegal acts, omissions, and conduct engaged in by Stone. Therefore, such

20  activities and violations also constitute nuisance _per se._

21        67.    Defendants are strictly, jointly, and severally liable for abatement of this nuisance.

22  Plaintiff is entitled to injunctive relief restraining and enjoining Defendants and requiring each of

23  them, jointly and severally, promptly and completely to take such action as may be necessary to abate

24  the nuisance at issue.

25        68.    For which Plaintiff seeks relief, as described, below.

26  **THIRD CAUSE OF ACTION**

27  **Against All Defendants**

28  **Public Nuisance**

11
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

69.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though they were set forth in full herein.

70.     California Civil Code § 3479 defines "nuisance," in relevant part as "[a]nything which is injurious to health, … or is indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, river, bay, canal, or basin."

71.     California Civil Code § 3480 defines "public nuisance" as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

72.     Allied caused or contributed to the past or present handling, storage, transportation, or disposal of metal waste and shavings in the environment at the Facility and Shoreline Parcel, including waters of the State of California, because Allied owned or controlled the Facility adjacent to the Shoreline Parcel when, and from which, the metal waste and shavings were released or otherwise discharged, deposited, disposed of, or discarded. Allied failed to prevent, mitigate, or abate such metal waste pollution. Allied's acts and omissions in causing or contributing to the release of solid wastes at, in, on, under, and around the site created a condition injurious to health and the environment, and is indecent and offensive to the sense and health of the public and/or individuals.

73.     Stone caused or contributed to the past or present handling, storage, transportation, or disposal of metal waste and shavings in the environment at the Shoreline Parcel, including waters of the State of California, because Stone owns the Shoreline Parcel, and from which, the metal waste and shavings and resulting contamination were released or otherwise discharged, deposited, disposed, of or discarded. Stone has failed to mitigate or abate such metal waste pollution. Stone's acts and omissions in causing or contributing to the release of solid wastes at, in, on, under, and around the Shoreline Parcel create a condition injurious to health and the environment, and is indecent and offensive to the sense and health of the public and/or individuals.

74.     By virtue of their frequent recreation in the Oakland Estuary, San Leandro Bay, and San Francisco Bay, Baykeeper's members suffer harm that is distinct from, and more severe than, the

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

harm suffered by the general public. The presence of metal waste in and along the Estuary also creates a visual blight that materially interferes with these recreational activities in a way that is distinct from the surrounding community's general harm from the pollution.

75.     Defendants have caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in California Civil Code §§ 3479 and 3480, namely the actual and potential endangerment to health and the environment created by the contamination from metal waste and shavings.

76.     Defendants are strictly, jointly, and severally liable for abatement of this public nuisance. Plaintiff is entitled to injunctive relief restraining and enjoining Defendants and requiring each of them, jointly and severally, promptly and completely to take such action as may be necessary to abate the public nuisance at issue.

77.     For which Plaintiff seeks relief, as described, below.

<h2 style="text-align:center"><u>REMEDY</u></h2>

78.     Plaintiff has no plain, speedy, adequate remedy, in the ordinary course of law, other than the relief sought in this Complaint.

<h2 style="text-align:center"><u>PRAYER FOR RELIEF</u></h2>

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.   A Court order declaring Defendants to have violated and to be in violation of the Resource Conservation and Recovery Act as alleged herein;

b.   A Court order enjoining Defendants to remove the metal waste and shavings from the Shoreline Parcel, and lawfully dispose of them;

c.   For judgment directing that Defendants abate the nuisance, a preliminary and permanent injunction directing Defendants to respond to, remove, and remediate the contamination;

d.   A Court order awarding Plaintiff its reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by RCRA, 42 U.S.C. § 6972(e), California Code of Civil Procedure Section 1021.5, and any other applicable theory or law;

e.   Award such other relief as this Court may deem appropriate.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

## DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Based on Plaintiff's knowledge to date, pursuant to Civil Local Rule 3-15, the undersigned certifies that, as of this date, other than the named parties, there is no such interest to report.

DATED: October 13, 2020                                    AQUA TERRA AERIS LAW GROUP


                                                           /s/ Jason R. Flanders
                                                           Jason R. Flanders
                                                           Attorneys for Plaintiff

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF